UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHEQUITA L. JOINER                                                    PETITIONER
ADC # 709661

v.                              No. 4:20-cv-00461-JTR

DEXTER PAYNE, Director,
Arkansas Division of Correction                                       RESPONDENT

### MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is the § 2254 Petition for Writ of Habeas Corpus filed by Shequita Joiner ("Joiner"). Before addressing Joiner's claims, the Court will review the procedural history of the case in state court.

### I. Background

On October 30, 2007, after a two-day trial, a Columbia County jury convicted Joiner of aggravated robbery and theft of property. *State v. Joiner*, Columbia County Circuit Court Case No. CR-2006-211. Based on the testimony and evidence presented at trial, the jury found that, on November 14, 2005, Rachel Cole ("Cole") drove Joiner to the Lakeside Water Association ("LWA") in Waldo, Arkansas, where Joiner walked inside with a sawed-off shotgun and robbed the clerk of her phone, her purse, the keys to her car, and the money from the LWA cash register,

---

[1] The parties have consented to proceeding before a United States Magistrate Judge. *Doc. 14*.

which was less than two hundred dollars. Cole, who faced separate charges for her role in the robbery, testified against Joiner at trial. *See State v. Cole*, Columbia County Cir. Ct. No. CR-2006-24.[2]

Later that same day, the trial court sentenced Joiner to 30 years for aggravated robbery and 10 years for theft of property, to be served consecutively. *Doc. 15-1 at 37-39*. Joiner appealed.

On April 3, 2008, the trial court entered an Order dismissing the criminal case against Cole. *See* Order Granting State's Motion to Nolle Prosequi, *State v. Cole*, Columbia County Cir. Ct. No. CR-2006-24; *Doc. 3 at 2*.

On direct appeal, Joiner argued the testimony presented at trial by the State was: (1) inconsistent; (2) contradicted by the physical evidence; and (3) purely circumstantial. *Joiner v. State*, No. CA CR 08-151, 2008 WL 2444720.

---

[2] At trial, Joiner's counsel asked Cole whether she was getting anything in return for her testimony:

| | |
|---|---|
| Counsel: | Now, I'm assuming that the reason you're here today is because you expect that that's going to help with the outcome of your charges? |
| Cole: | Well, all I know is, my lawyer . . . told me to come up and tell the truth. |
| Counsel: | But I asked what your expectation was. Is it your expectation that your testimony today is going to help you out with your case? |
| Cole: | Hopefully. |
| Counsel: | Okay. And have there been any discussions as far as what it's supposed to do for you? |
| Cole: | No. |

*Doc. 15-1 at 259-260.*

On June 18, 2008, the Arkansas Court of Appeals affirmed Joiner's convictions, concluding: (1) the directed-verdict motion made by Joiner's counsel at trial only argued that the testimony was contradictory; (2) any inconsistencies in the testimony were for the jury to resolve; and (3) Joiner's remaining arguments were not preserved for appeal. *Id*. On July 8, 2008, the Arkansas Court of Appeals issued its Mandate. *Doc. 15-3 at 55*.

On September 5, 2008, Joiner filed a Rule 37 Petition, raising the following ineffective assistance of counsel claims: (1) trial counsel failed to request a jury instruction on the need for corroboration of her confession;[3] and (2) trial counsel failed to make a proper and complete motion for directed verdict. *Doc. 15-3 at 57-62*.

On September 30, 2008, the trial court denied Rule 37 relief. *Doc. 15-3 at 63-66*. On October 23, 2008, Joiner appealed. *Id. at 67*.

On June 24, 2010, the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief, concluding that, even if Joiner's trial counsel's performance was deficient, she could not demonstrate any resulting prejudice because there was substantial evidence of her guilt. *Joiner v. State*, 2010 Ark. 309 (2010).

---

[3] Arkansas law required Joiner's out-of-court confession to be "accompanied by other proof the offense was committed." Ark. Code Ann. § 16-89-111(d) (eff. 2001 to 2013).

Over eight years later, on February 6, 2019, Joiner filed, in the Arkansas Supreme Court, a *pro se* Petition to Reinvest Jurisdiction in the Trial Court, arguing *for the first time*: (1) the prosecutor withheld the fact that Cole testified against Joiner at trial in exchange for the dismissal of the criminal charges pending against her; (2) the lead investigator, Truman Young ("Investigator Young"), withheld material evidence; and (3) her appointed trial counsel and the prosecutor were brothers-in-law, which was an undisclosed conflict of interest. *Doc. 15-5*.

On October 17, 2019, the Arkansas Supreme Court denied Joiner's Petition to Reinvest Jurisdiction in the Trial Court, concluding that Joiner had failed to state sufficient allegations to reinvest jurisdiction in the trial court. *Joiner v. State*, 2019 Ark. 279, 585 S.W.3d 161 (2019) (Hart, J., dissenting).[4]

On November 5, 2019, Joiner filed a second *pro se* Petition to Reinvest Jurisdiction in the Trial Court, reframing her claims based on Justice Hart's dissent. *Doc. 15-7*.

On April 2, 2020, the Arkansas Supreme Court denied Joiner's second Petition to Reinvest Jurisdiction in the Trial Court. *Joiner v. State*, 2020 Ark. 126, 5-6, 596 S.W.3d 7, 13 (2020).

---

[4] Justice Hart dissented that Joiner had adequately stated a *Brady* violation and should have been allowed to return to the trial court for a hearing on whether she was entitled to a new trial, noting "the difference between [Cole] receiving a plea bargain for a lesser sentence and . . . receiving a wholesale dismissal of all potential charges against her is no small thing." *Joiner v. State*, 2019 Ark. 279, 7-10, 585 S.W.3d 161, 166-167 (2019).

On April 24, 2020, Joiner initiated this § 2254 habeas action.[5]  *Doc. 1*.  On May 26, 2020, Joiner filed an amended habeas Petition, in which she presents the following claims:

Claim 1   The prosecutor withheld the fact that Joiner's accomplice, Cole, testified against Joiner at trial in exchange for the dismissal of the criminal charges pending against her.  *Doc. 6 at 11*.

Claim 2   The lead investigator, Truman Young ("Investigator Young"), withheld material evidence from the jury.  *Id. at 13, 19*.

Claim 3   The trial court erred in convicting Joiner because she was not positively identified by the victim and no fingerprints were ever taken to connect Joiner to the crime.  *Id. at 20*.

Claim 4   Joiner's trial counsel failed to file a motion for discovery prior to trial and presented no mitigation evidence at trial.  *Id. at 20-21*.

Claim 5   Joiner's trial counsel and the prosecutor were brothers-in-law.  *Id. at 17*.

On July 20, 2020, Respondent filed a Response arguing that all of Joiner's habeas claims are time-barred.  *Doc. 15*.  On August 24, 2020, Joiner filed a Reply.  *Doc. 21*.

---

[5] Joiner sent her initial pleading, entitled "Pro se Petition for Writ of Error Coram Nobis to reinvest Jurisdiction in the Trial Court," to the United States Court of Appeals for the Eighth Circuit.  *Doc. 1*.  The Eighth Circuit forwarded the pleading to this Court.  On May 4, 2020, the Court entered an Order construing Joiner's filing as a request for habeas relief arising under 28 U.S.C. § 2254 and directed Joiner to file an amended habeas Petition using the court-approved form.  *Doc. 2*.

For the reasons that follow, the Court concludes that all of Joiner's habeas claims are untimely and dismisses this habeas action, with prejudice.

## II. Discussion

### A. AEDPA's One-Year Statute of Limitations Began to Run When the Judgment Against Joiner Became Final.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a one-year statute of limitations governs a state prisoner's federal habeas corpus challenge to her conviction. 28 U.S.C. § 2244(d)(1). Generally, the limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). However, if a petition alleges newly discovered evidence, the filing deadline is one year from "the date on which the factual predicate of the claim could have been discovered through due diligence." 28 U.S.C. § 2244(d)(1)(D).

Joiner claims that she "just found out" about the facts underlying all of her habeas claims and that she "filed this petition immediately after discovering material evidence was withheld and could've change[d] the outcome of petitioner's trial had it been known at the time[.]" *Doc. 1 at 1*. However, as explained below, Joiner *could have discovered* the facts underlying all of her habeas claims *before* her conviction became final.

*Claim 1*

Joiner claims that the prosecutor did not disclose the fact that Joiner's accomplice, Cole, received immunity in exchange for testifying against Joiner. *Doc. 6 at 11*. Even assuming the prosecutor committed the alleged *Brady* violation, the trial court entered its order dismissing the criminal case against Cole on April 3, 2008, two months *before* the Arkansas Court of Appeals affirmed Joiner's conviction. *Doc. 3 at 2*. Thus, the factual predicate to Claim 1 was a matter of public record easily discoverable to Joiner before her conviction became final.

*Claim 2*

Joiner claims Investigator Young "knew" that she did not commit the robbery because witness Darlene Mask ("Mask") told him, in a recorded statement, that: (1) Cole had threatened Mask after she told police that she knew about the robbery; (2) Cole admitted to Mask that she hid the sawed-off shotgun used in the robbery; and (3) Cole admitted to Mask that she hid "several items" taken during the robbery.[6]

---

[6] At trial, Mask testified that she saw Joiner and Cole at her cousin's house after the robbery and overheard "Shequita sa[y] something about they had cameras at the office and stuff and they was going to go back and try to get them, that they had them on tape, something about they caught the white car on tape . . . and something about that they was going to go back and something about a woman being held and they had a gun to some lady's head and she said something about they should have killed her. . . so they wouldn't have no proof, so there wouldn't be no witness in court and so they wouldn't have no proof. . . That's what I heard her say." Mask further testified that she heard Joiner talking about taking a white vehicle and "a purse, money, money or something from the Water Office. She was bragging something about some money she had got." *Doc. 15-1 at 126-129*.

7

First, these facts are not new. Instead, they come directly from Investigator Young's Affidavit, dated September 6, 2006, which he prepared "in support of probable cause for detention to be considered by the Judicial Officer conducting the pre-trial release inquiry." *Doc. 15-1 at 13*. Investigator Young's Affidavit states:

> Ms. Mask stated Rachel Cole dropped her girlfriend [Joiner] out at the water office and went back to pick her up. Ms. Mask stated Rachel hid the sawed-off shotgun under the door steps of her mother's house. Ms. Mask stated Rachel took several items from the robbery and hid them in the woods behind her house. Ms. Mask further stated that Rachel Cole has been sending threatening messages to her, because she has told the police what she knew about the robbery. . . . Ms. Mask stated that Shequita [Joiner] said Rachel was the one that gave her the gun and took her to the Lakeside Water Office to rob it and Rachel came back to pick her up.
> . . .
> Investigator Young went to Texarkana and met with Ms. Mask, who gave a detailed taped statement about what she witnessed, overheard and what she had been told by Rachel's family members about Rachel Cole and her girlfriend committing the robbery. Ms. Mask positively identified Rachel Cole's girlfriend as Shequita Joiner of Waldo, Arkansas[.] . . . Ms. Mask stated that she heard Shequita Joiner say on several occasions that she was not going down by herself and if she went down Rachel was going down too. Ms. Mask stated that Shequita said Rachel was the one that gave her the gun and took her to the Lakeside Water Office to rob it and Rachel came back to pick her up.

*Doc. 15-1 at 15-16*. Investigator Young's Affidavit was filed in the Arkansas Supreme Court, *as part of trial court record*, during Joiner's direct appeal. *Doc. 15-1 at 13-16*. There is nothing in the record to suggest that Joiner or her trial counsel did not have access to Investigator Young's Affidavit before trial.

Second, these facts are not exculpatory. Instead, they lend further support to the prosecution's theory that Cole and Joiner, together, committed the robbery.

8

Joiner also claims Investigator Young "knew" that Joiner did not commit the robbery because the evidence against her was "purely circumstantial," the trial testimony contradicted the physical evidence, and Cole's testimony was the only thing tying Joiner to the robbery. However, these are legal conclusions, not facts. Joiner has failed to point to *any* material facts withheld by Investigator Young.

Thus, the factual predicate to Claim 2 was available to Joiner before her conviction became final.

*Claims 3 and 4*

Joiner's claims that she was not positively identified by the victim, no fingerprint evidence connected her to the crime, her trial counsel failed to file a motion for discovery, and her trial counsel presented no mitigation evidence are not new. However, identifying these potential claims of trial error and ineffective assistance of counsel required only a review the trial court record, which would have been prepared shortly after Joiner's trial.

Thus, the factual predicates to Claims 3 and 4 were available to Joiner before her conviction became final.

*Claim 5*

Finally, Joiner claims that her court-appointed counsel and the prosecutor were brothers-in-law at the time of her trial, which amounted to an undisclosed

9

conflict of interest.[7] While Joiner claims she only recently became aware of this fact, she gives no reason why she could not have discovered the relationship at any point during her criminal case or in the decade following her conviction.[8]

Thus, Joiner has failed to demonstrate that the factual predicate to Claim 5 was unavailable to her before her conviction became final.

Accordingly, Joiner *could have discovered* the facts underlying all of her habeas claims *before* her conviction became final for purposes of 28 U.S.C. § 2244(d)(1)(A). Thus, Joiner had one year from the date her conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review" to bring this habeas action. 28 U.S.C. § 2244(d)(1)(A).

---

[7] In making this claim, Joiner also complains that "*shortly after* petitioner's trial there was an article in the paper regarding [her trial] counsel[,] [the prosecutor], and [the trial judge] stealing money." *Doc. 6 at 17* (emphasis added). Joiner does not explain how the alleged misconduct was connected to her case *or* how it prejudiced her defense. Regardless, Joiner's acknowledgment that the alleged newspaper article was published *shortly after* her trial means it would have been available to her *well before* the conclusion of direct review.

[8] Furthermore, the fact that the prosecutor and trial counsel were *brothers-in-law*, even if undisclosed, does not violate Ark. R. Prof. Cond. 1.8, which states: "A lawyer related to another lawyer as *parent, child, sibling or spouse* shall not represent a client in a representation directly adverse to a person whom the lawyer knows is represented by the other lawyer except upon informed consent by the client, confirmed in writing." (Emphasis added.)

## B. AEDPA's One-Year Limitations Period Began to Run on July 7, 2008, and Expired on April 27, 2011.

On June 18, 2008, the Arkansas Court of Appeals affirmed Joiner's conviction. Joiner then had eighteen days – until and including July 6, 2008 – to seek discretionary review of that decision. Ark. S. Ct. Rules 2-3(a) and 2-4(a). However, Joiner did not seek discretionary review by the Arkansas Supreme Court. Thus, Joiner's judgment of conviction became "final" on July 7, 2008, when she could no longer file a petition for review with the Arkansas Supreme Court. *Johnson v. Hobbs*, 678 F.3d 607, 610 (8th Cir. 2012).

The limitations period ran for 60 days, but was then statutorily tolled *from* September 5, 2008, the date Joiner filed her timely Rule 37 Petition, *to* June 24, 2010, the date the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief.[9] *Joiner v. State*, 2010 Ark. 309 (2010). On June 25, 2010, the limitations period resumed running and expired 305 days later on April 26, 2011.[10]

Thus, Joiner filed her habeas Petition nine years late.

---

[9] AEDPA provides that the one-year limitations period is tolled while a "properly filed" Rule 37 Petition for post-conviction relief is pending in state court. 28 U.S.C. § 2244(d)(2). Joiner filed a timely Rule 37 Petition fifty-nine days after the Arkansas Court of Appeals issued its Mandate on July 8, 2008. *See Doc. 15-3 at 57-61*; Ark. R. Crim. P. 37.2(c)(ii) (Rule 37 petition must be filed within sixty days of the date the Arkansas Court of Appeals issued its mandate).

[10] Joiner's recent Petitions to Reinvest Jurisdiction in the Trial Court have no tolling effect because both were filed after the one-year limitations period expired. *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001).

11

### C.  Equitable Tolling Cannot Be Applied to Excuse Joiner's Untimeliness.

Because § 2244(d) has been held to be a statute of limitation, not a jurisdictional bar, the one-year limitations period may be equitably tolled if Joiner can demonstrate that: (1) she has been "pursuing [her] rights diligently," but (2) "some extraordinary circumstance stood in [her] way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2560, 2562 (2010). "Equitable tolling is an exceedingly narrow window of relief[,]" and "[t]he burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007) (omitting citation); *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009).

As cause to excuse her untimeliness, Joiner argues that she has been incarcerated, without an attorney, and is ignorant of the law. *Doc. 21 at 1-2*. However, the Eighth Circuit has repeatedly held that a habeas petitioner's *pro se* status, lack of legal knowledge or resources, or any confusion about the federal limitations period or state post-conviction law does not justify equitable tolling. *Gordon v. Arkansas*, 823 F.3d 1188, 1195, n. 4 (8th Cir. 2016) (rejecting petitioner's argument to apply equitable tolling to period he was attempting to exhaust state-court remedies); *Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012) (a petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law, does not justify equitable

tolling); *Shoemate v. Norris*, 390 F.3d 595, 597-598 (8th Cir. 2004) (same); *Baker v. Norris*, 321 F.3d 769 (8th Cir. 2003) (same).

Accordingly, equitable tolling cannot be applied to excuse Joiner's untimeliness.

### D. Joiner Has Failed to Offer New Evidence Demonstrating That She Is Actually Innocent.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the AEDPA statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383 (2013). The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he [or she] persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995), and *House v. Bell*, 547 U.S. 518, 538 (2006)) (internal quotations omitted).

The actual innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324; *Barton v. Stange*, 959 F.3d 867, 872 (8th Cir.), cert. denied, 140 S. Ct. 2800, 206 L. Ed. 2d 960 (2020). The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a

13

miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316; *Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when a habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis."). Finally, to obtain review of his otherwise defaulted claim, "it is the petitioner's, not the court's, burden to *support* his allegations of actual innocence by *presenting* new reliable evidence of his innocence." *Weeks v. Bowersox*, 119 F.3d 1342, 1353 (8th Cir. 1997) (quoting *Battle v. Delo*, 64 F.3d 347 (8th Cir. 1995)) (internal marks omitted).

Joiner has failed to point to any new evidence demonstrating she did not commit the 2005 robbery. Instead, she asks the Court to allow her an evidentiary hearing to reexamine the record, particularly the recording of Mask's statement to Investigator Young. *Battle*, 64 F.3d at 354 (the "actual innocence" gateway exists "to avoid fundamental miscarriages of justice, not to provide the opportunity for fishing expeditions and delay or . . . a second trial). Because the recording was identified and described in Investigator Young's September 7, 2006 Affidavit, it could have been discovered at trial through due diligence. Thus, Mask's recorded statement is not *new* evidence.

Joiner has also provided a letter from Investigator Young, which is undated, that apparently advised Joiner on how she should go about seeking a sentence reduction in the trial court, then concluded with the following cryptic paragraph:

14

> PS: I, Remember when you first start writing me asking for any help I could provide, they spoke against me saying I could not be trusted. I even spoke to them over the phone telling them about the law and they could not accept it almost saying I was a crook and not to listen at what I say. My many years in law enforcement I would never lie on no one and never lie for someone, I let the court make the decision not me. I could not realize how your family thought of you being innocence without any witnesses to support you. You family was only character witnesses speaking on your behalf as a love one and who would go against a love one. I don't know what your family even think of me now, but I am the same Truman as I have always been.

*Doc. 1 at 11* (verbatim). According to Joiner, this is proof of her actual innocence. The Court disagrees. The letter does *not* state that Joiner is actually innocent, nor does it point to *any* new and reliable evidence not presented to the state courts that demonstrates Joiner's actual innocence.

It is not lost on the Court that Joiner and Cole, *together*, carried out a violent crime, while only Joiner received punishment. However, there is nothing in the record suggesting that Joiner was not involved in the robbery committed fifteen years ago, or that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Grouse*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Accordingly, Joiner's habeas action must be dismissed, with prejudice, as untimely.

## III. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Joiner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus and amendment thereto, *Docs. 1 and 6*, are DENIED and this case is DISMISSED, WITH PREJUDICE.

2. A Certificate of Appealability is DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

3. Joiner's Motion for Appointment of Counsel, *Doc. 17*, is DENIED as MOOT.

4. Joiner's Motion to Grant Discovery, *Doc. 19*, is DENIED as MOOT.

DATED this 3rd day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE